HAEGGQUIST & ECK, LLP
ALREEN HAEGGQUIST (221858)
  alreenh@haelaw.com
KATHLEEN A. HERKENHOFF (168562)
  kathleenh@haelaw.com
ROBERT D. PRINE (312432)
  robertp@haelaw.com
225 Broadway, Suite 2050
San Diego, CA  92101
Telephone: (619) 342-8000
Facsimile: (619) 342-7878

Attorneys for Plaintiff Kyle Bergen

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE BERGEN, an Individual, | Case No.: '20 CV1919 W    WVG |
| Plaintiff, | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| v. | |
| TERADYNE, INC., a Massachusetts Corporation; and DOES 1 through 25, Inclusive, | |
| Defendants. | DEMAND FOR JURY TRIAL |

HAEGGQUIST & ECK, LLP

1    Plaintiff Kyle Bergen ("Plaintiff" or "Mr. Bergen"), by his attorneys, brings this

2    action on behalf of himself against Teradyne, Inc. ("Teradyne") and DOES 1 through

3    25, inclusive (collectively "Defendants"). Mr. Bergen makes the following allegations

4    upon information and belief (except those allegations as to Mr. Bergen or his

5    attorneys, which are based on personal knowledge), based upon an investigation that

6    is reasonable under the circumstances, which allegations are likely to have evidentiary

7    support after a reasonable opportunity for further investigation and/or discovery.

8                                    **NATURE OF ACTION**

9    1.     This case is about an employee who was committed to "work hard" but

10   refused to "play hard."  Had Kyle Bergen known that "work hard, play hard" was a

11   prerequisite for the job, he would have never accepted Defendants' offer of

12   employment in San Diego, and moved his family across the country.  But "work hard

13   play hard" was never part of the job description.  Additionally, Mr. Bergen, after

14   working alongside Defendants for months, believed Defendants were committed to

15   hard work, making it a perfect fit for the industrious Ms. Bergen.  Indeed, Defendants

16   initially felt the same way, when Defendants actively recruited Mr. Bergen and

17   immediately hired him as San Diego's Technical Support Manager at Teradyne's and

18   its subsidiary.

19   2.     From day one, Mr. Bergen fulfilled his promise and worked hard.  He

20   stayed up until the early hours of the morning to communicate with certain of

21   Defendants' offices in Denmark, and still managed to be the first one in the San Diego,

22   California office virtually every morning.  Indeed, Mr. Bergen's ability to work hard

23   was never a question.  But following a conference in Las Vegas, Ed Mullen, the Vice

24   President of Sales, witnessed Mr. Bergen leave a late-night, post-networking event

25   early.  When Mr. Mullen pressed Mr. Bergen on this the next day, Mr. Bergen stated

26   that he "did not like drinking."  During the trip, Mr. Bergen felt obligated to drink and

27   was having trouble keeping a hold on his alcoholism, and as a result requested

28   accommodation to attend treatment for his alcohol addiction.

HAEGGQUIST & ECK, LLP

3.     After learning Mr. Bergen would not play hard and would need to seek protected leave for his alcoholism, Defendants had Ed Mullen fire Mr. Bergen. When Mr. Bergen asked why he was being fired, Mr. Mullen admitted, "after Vegas, I started to think you weren't right for the job."   Defendants did not want to accommodate Mr. Bergen's disability and fired him while Mr. Bergen was coordinating his leave with Defendants' Benefits Manager and Employee Assistance Program.  Defendants' actions were in complete dereliction of their obligations under California law, specifically to engage in an interactive process and determine a reasonable accommodation for Mr. Bergen's disability, which Defendants could have easily done.  Instead, Defendants unlawfully terminated Mr. Bergen's employment.

4.     To redress the harms suffered, Mr. Bergen brings claims for: (1) disability discrimination and wrongful termination in violation of 42 U.S.C. §12112 ; (2) disability discrimination and wrongful termination in violation of Government Code §12940(a); (3) failure to provide reasonable accommodation for alcohol rehabilitation in violation of Labor Code §1025; (4) failure to provide reasonable accommodation in violation of Government Code §12940(m); (5) retaliation for requesting reasonable accommodation in violation of Government Code §12940(m); (6) failure to engage in the interactive process in violation of Government Code §12940(n); (7) failure to prevent discrimination and retaliation in violation of Government Code §12940(k); and (8) false representations to induce employee to change residences for employment in violation of Labor Code §970.

**JURISDICTION AND VENUE**

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises under the laws of the United States, and pursuant to 28 U.S.C. §1332(a)(1) because Plaintiff and one or more of the Defendants named herein are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

HAEGGQUIST & ECK, LLP

6.     The Southern District of California has personal jurisdiction over Defendants because Teradyne and its subsidiaries have locations and/or conduct business in the County of San Diego, State of California.  During the relevant time period, Defendants did sufficient business in, had sufficient contacts with, and intentionally availed themselves of, the laws of California through the operation of their respective businesses, as to render exercise of jurisdiction by this Court permissible.  During the relevant time period, a majority of the alleged unlawful acts occurred in the County of San Diego, State of California.

7.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiff and Defendants are, and at all relevant times have been, subject to the personal jurisdiction of this Court, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  Defendants are currently doing significant amounts of business in the County, and they have done business during the relevant time period in the County.  In addition, all of the acts and practices giving rise to Plaintiff's claims occurred in this County.

**THE PARTIES**

**PLAINTIFF**

8.     Mr. Bergen is a resident of the County of San Diego, State of California. Mr. Bergen is a member of a protected class of persons under the Americans with Disabilities Act, 42 U.S.C. §§12101, *et seq*, and the California Fair Employment and Housing Act, Government Code §12940, *et seq*, based on his disability.  Mr. Bergen was employed by Defendants in the position of Technical Support Manager from about April 18, 2019 to approximately November 6, 2019.

**DEFENDANTS**

9.     Teradyne, Inc. ("Teradyne") is a Massachusetts corporation, with its principle place of business located at 600 Riverpark Drive, North Reading, Massachusetts 01864.  At all relevant times, Teradyne and/or its subsidiaries employed and/or jointly employed Mr. Bergen.  At all relevant times, Teradyne

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

HAEGGQUIST & ECK, LLP

employed more than twenty-five persons and is, and all times mentioned herein was, an "employer" within the meaning of Government Code §§12926(d), Labor Code §1025, and 42 U.S.C. §12111(5)(A).

10.     In doing the acts alleged herein, Defendants' employees, subcontractors, and agents acted within the course and scope of their employment and agency with Defendants. Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees, subcontractors, and agents, and is vicariously liable for the wrongful conduct of its employees, subcontractors, and agents alleged herein.

11.     Mr. Bergen does not know the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sues them by these fictitious names. Mr. Bergen will amend this Complaint to include their names and capacities once they are known. Mr. Bergen is informed and believes, and on that basis alleges, that each of the Defendants designated as a DOE is legally responsible in some manner for the occurrences alleged in this Complaint, and unlawfully caused the injuries and damages to Mr. Bergen as alleged in this Complaint.

12.     Mr. Bergen is informed and believes, and thereon alleges, that each Defendant is, and at all times mentioned was, the agent, employee, or representative of each other defendant. Each Defendant, in doing the acts, or in omitting to act as alleged in this Complaint, was acting within the scope of her or her actual or apparent authority, or the alleged acts and omissions of each defendant as agent subsequently were ratified and adopted by each other defendant as principal.

## EXHAUSTION OF REMEDIES

13.     On January 13, 2020, Mr. Bergen filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC") against Teradyne, styling it as a dual filing with the California Department of Fair Employment and Housing ("DFEH"). That same day, a document was issued, to the attention of Mr. Bergen and Teradyne's Vice President, General Counsel and

HAEGGQUIST & ECK, LLP

Secretary, in the form of a "Notice to Complainant of Right to Sue" (the "Teradyne DFEH RTS Notice"). Additionally, on June 30, 2020, the EEOC issued a Right to Sue Notice to Plaintiff (the "Teradyne EEOC RTS Notice"). The Teradyne DFEH RTS Notice and the Teradyne EEOC RTS Notice are collectively attached hereto as Exhibit 1.

## FACTS COMMON TO ALL COUNTS

14.     Defendants design, manufacture, and sell mobile industrial robots, which are robots that are programmed to perform tasks in industrial settings.

15.     Currently, Teradyne and/or its subsidiaries have at least seven offices across the world, including an office located in San Diego, California.

16.     From December 2017 through December 2019, Nicholas Temple served as Defendants' Western Sales Director, working out of the San Diego office. Mr. Temple also had an eye for talent, so Defendants authorized him to recruit and hire individuals for sales and technical positions with Defendants. For months, Mr. Temple had his eye on Mr. Bergen, who at the time was working as a Manufacturing Engineer with Anderson Corporation in Minnesota. When a position opened up at Defendants' San Diego office in early 2019, Mr. Temple urged Mr. Bergen to apply for the position, which Mr. Bergen did. Mr. Temple also recommended Mr. Bergen to Defendants' upper management, citing to Mr. Bergen's strong work ethic, positive work demeanor, and broad knowledge of Defendants' products because of his time working with Defendants. Mr. Bergen interviewed with Ed Mullen, Defendants' Vice President of Sales, who worked from Defendants' New York location. After the interview, Mr. Mullen concurred with Mr. Temple's recommendation and on April 5, 2019, offered Mr. Bergen a position as a Technical Support Manager in the San Diego office.

17.     While Mr. Bergen was ecstatic to receive this offer, Mr. Bergen and his family were still living in Minnesota. Although Mr. Bergen was hesitant to move his family, he was confident that he would excel in his new position, accepted the offer

HAEGGQUIST & ECK, LLP

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and eventually moved his family to San Diego.  Mr. Bergen would not have uprooted and moved his family, and quit his job, if he knew he would be discriminated against and mistreated by Defendants.  In fact, Teradyne represents on its Website that it "adamantly uphold[s] a number of policies to ensure equality, including nondiscrimination and pay equity policies."[1]  Indeed, in accepting Defendants' job offer, Mr. Bergen relied on Defendants' promise that it was an equal opportunity employer and did not discriminate on the basis of an employee's disability .

18.     When Mr. Bergen started working for Defendants on or around April 18, 2019, he was immediately among Defendants' hardest working employees.  He worked countless hours organizing technical resources, following up on processes, and working with Sales Directors, such as Nicholas Temple, to prioritize client needs.  Notably, Mr. Bergen worked late/early morning hours, sometimes up until 1:00 am, so he could correspond with Defendants' Danish offices relating to important projects.  Despite these late night/early morning calls, Mr. Bergen was usually the first person in the San Diego office every morning.  Indeed, Mr. Bergen took the time to learn the business and worked hard so he could become a valuable, long-term asset to Defendants.  Although Mr. Bergen never received any performance reviews, he was constantly praised by the San Diego team.  Within just a few months of working, Mr. Bergen established himself as a vital member of the team and was confident that he had found a job, and a city, he could stay in for the rest of his life.

19.     On September 23, 2019, Mr. Bergen, Mr. Temple, and Mr. Mullen travelled to Las Vegas, Nevada to attend a two-day technology convention.  During the convention, Mr. Bergen started his days at 7:00 a.m. and the convention would typically finish around 4:00 p.m.  On the first day, Defendants asked him to attend an

---

[1] *See Corporate Social Responsibility*, Teradyne, https://www.teradyne.com/company/corporate-social-responsibility/.(last visited September 24, 2020)

HAEGGQUIST & ECK, LLP

evening event for dinner.  At the dinner (attended by Mr. Mullen, Plaintiff and Mr. Temple, among others), as drinks were consumed, the networking opportunity turned much more casual.  The next night Mr. Bergen was also pressed to go out after the end of the convention with Mr. Mullen, Mr. Temple and others.  This time, however, Mr. Bergen wanted to avoid drinking anymore and excused himself to go to bed.  Mr. Bergen had been suffering from alcoholism, and had previously been in treatment. While Mr. Bergen, after treatment, could control his drinking, the post-convention environment made it difficult for Mr. Bergen to control.  Fortunately, Mr. Bergen was able to solve this problem by simply excusing himself from the situation on the second night once the work portion of the day's events concluded.

20.    On the last night of the two-day convention, Ed Mullen, visibly and clearly upset by Mr. Bergen's decision to leave and not continue drinking, asked Mr. Bergen to meet him in hotel lobby/casino the following morning before Mr. Bergen's flight home.  When Mr. Bergen approached Mr. Mullen that morning, Mr. Mullen questioned Mr. Bergen about why Mr. Bergen went to bed early and refused to stay out until 2:00 a.m. with the rest of the group.  When Mr. Bergen explained to Mr. Mullen that he was tired and did not want to continue drinking, Mr. Mullen responded that "was an issue."

21.    That same day, Mr. Bergen, terrified that he would lose his job over refusing to "play hard," sent an email to Mr. Mullen explaining why he retired early the night before.  Mr. Bergen stated in the e-mail, "I don't like drinking, and during this trip I felt obligated to."  Mr. Bergen explained his perspective, his intentions of moving forward with company and his dedication to work hard, but his unwillingness to stay out late and drink.  He finished the email stating, "I appreciate all your support, feedback, and criticism, and I look forward to improve our relationship and the tech support team."  Around mid-October 2019, Mr. Bergen and Mr. Mullen spoke further about Mr. Bergen's alcohol issues, and Mr. Bergen acknowledged he would be taking some time off to seek alcohol treatment.  Mr. Mullen seemingly approved Mr.

Bergen's request and told Mr. Bergen he would get him in touch with Defendants' benefits coordinator regarding his leave to seek treatment.

22.     On October 31, 2019, David Shorey, Defendants' Benefits Manager, texted Mr. Bergen to discuss his request for leave.  The same day, Mr. Bergen responded, asking Mr. Shorey if he knew of any alcohol treatment centers in San Diego.  The two discussed Mr. Bergen's insurance, treatment centers, and the next steps Mr. Bergen would need to take to proceed with treatment.  Mr. Bergen then reached out to Defendants' Employee Assistance Program, Life Works, who opened a case on his behalf.

23.     Just before Mr. Bergen could get his ducks in a row to take leave, on November 6, 2019, Mr. Mullen (whose office location was in New York) reached out to Mr. Bergen, explaining that he was in San Diego and wanted to speak to Mr. Bergen in the building lobby of Defendants' office location.   Given Mr. Bergen's conversations with Defendants' Benefits Manager just a couple days before, Mr. Bergen was sure Mr. Mullen wanted to discuss his upcoming leave and reassigning work responsibilities during his time off.  Instead, Mr. Mullen fired Mr. Bergen on the spot because "things weren't working out."  Mr. Bergen was understandably taken aback and laughed, thinking Mr. Mullen was joking.  When he realized Mr. Mullen was serious, Mr. Bergen questioned if there would be any discussion to be had or if Mr. Mullen would reconsider.  Mr. Mullen responded that the final decision was made, he did not have time to discuss it any further, and brazenly remarked "After Vegas, I started to think you weren't right for the job" and making the comment "this has nothing to do with your personal life."

24.     Simply put, Mr. Mullen would not accept Mr. Bergen's decision to get help for his alcoholism.  Mr. Bergen had informed Defendants of his disability, his intention to take leave, and was working with Defendants' Benefits Manager to coordinate his leave.  Defendants, however, fired Mr. Bergen, a disabled employee, before he could take protected leave because of his disability.

HAEGGQUIST & ECK, LLP

**COUNT I**

**Disability Discrimination and Wrongful Termination
In Violation of 42 U.S.C. §12112, *et seq*.**

25.    Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

26.    The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12112, *et seq*. expressly prohibits discrimination in employment on the basis of disability. Specifically, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment.  42 U.S.C. §12112(a).  The ADA Amendments Act of 2008 ("ADAAA") expanded the ADA, providing the definition of disability "shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act."  42 U.S.C. §12102(4)(A).  Under the ADA, "[t]he term 'disability' means . . . a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. §12102(1)(A); *see also* 42 U.S.C. §12102(2)(A) (the ADAAA clarified that "major life activities include . . . working.").  Alcoholism is recognized as a disability under the ADA.  *See Brown v. Lucky Stores*, 246 F.3d 1182, 1188 (9th Cir. 2001).

27.    Additionally, the term 'disability' also means, "being regarded as having such an impairment."  42 U.S.C. §12102(1)(C).  The ADAAA added that, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. §12102(3)(A).

28.     The ADAAA also clarified that, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. 42 U.S.C. §12102(4)(D).

29.     Plaintiff was employed by Defendants and qualifies as an employee under the ADA.  *See* 42 U.S.C. §12111(4).

30.     Defendants employed over fifteen employees and qualifies as covered employers under the ADA.  *See* 42 U.S.C. §12111(5)(A).

31.     At all times mentioned herein, Mr. Bergen could, with reasonable accommodation, perform the essential functions of his employment position and qualifies as a qualified individual under the ADA.  *See* 42 U.S.C. §12111(8).

32.     At all times mentioned herein, Mr. Bergen was in a class of persons protected by ADA because of his alcoholism and/or perceived alcoholism.

33.     As alleged herein and in violation of the ADA, Defendants discriminated against and wrongfully terminated Mr. Bergen's employment because of his alcoholism and/or perceived alcoholism, and because he sought treatment for his alcoholism.

34.     Defendants made no individualized assessment to determine whether Mr. Bergen could perform the essential functions of his job or whether a reasonable accommodation would enable him to be employed in his position, as required by the ADA.

35.     As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

36.     As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

HAEGGQUIST & ECK, LLP

37.     In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

38.     Mr. Bergen is also entitled to costs and reasonable attorneys' fees pursuant to 42 U.S.C. §12205 because of Defendants' wrongful conduct.

## COUNT II

### Disability Discrimination and Wrongful Termination
### In Violation of Government Code §12940(a)

39.     Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

40.     Government Code §12940(a) states in pertinent part: "It is an unlawful employment practice . . . (a) [f]or an employer, because of the . . . physical disability . . . of any person . . . to discharge the person from employment . . . ." Government Code §12926 defines "physical disability" to include "[b]eing regarded or treated by the employer . . . as having . . . any physical condition that makes achievement of a major life activity difficult." Government Code §12926(m)(4); *see also Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 53 (2006). "'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working." Government Code §12926(m)(1)(B)(iii).   Alcoholism is a protected disability under California law. *Gosvener v. Coastal Corp.*, 51 Cal. App. 4th 805, 813 (1996), *overruled on other grounds by Colemanares v. Braemer Country Club, Inc.*, 29 Cal. 4th 1019 (2003).

41.     At all times mentioned herein, Mr. Bergen was in a class of persons protected by Government Code §12940 because of his physical disability, and because Defendants perceived Mr. Bergen as having a physical disability.

HAEGGQUIST & ECK, LLP

42.     As alleged herein and in violation of Government Code §§12940, *et seq.,* Defendants discriminated against and wrongfully terminated Mr. Bergen's employment because of his physical disability and/or perceived physical disability.

43.     As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

44.     As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

45.     In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

46.     Mr. Bergen is also entitled to costs and reasonable attorneys' fees pursuant to Government Code §12965(b) because of Defendants' wrongful conduct.

## COUNT III

### Failure to Provide Reasonable Accommodation for Alcohol Rehabilitation In Violation of Labor Code §1025

47.     Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

48.     Labor Code §1025 provides, "[e]very private employer regularly employing 25 or more employees shall reasonably accommodate any employee who wishes to voluntarily enter and participate in an alcohol or drug rehabilitation program, provided that it does not impose an undue hardship on the employer." Labor Code §1025.

HAEGGQUIST & ECK, LLP

1
2
3
4
5
6
7

HAEGGQUIST & ECK, LLP

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

49.     Mr. Bergen requested a reasonable accommodation for his alcoholism by asking for a brief period of time off from work to voluntarily enter and participate in an alcohol rehabilitation program.  Mr. Bergen was already engaged in discussions with Defendants' Benefits Manager relating to (1) his alcoholism; (2) his intention to take leave; and (3) that he would be researching treatment centers and work with Defendants to determine his scheduling. Furthermore, Mr. Bergen was also communicating with Defendants' Employee Assistance Program.

50.     Defendants, however, refused to provide Mr. Bergen with reasonable accommodations, even though it could have easily done so without undue hardship.

51.     As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

52.     As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

53.     In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

**COUNT IV**

**Failure to Provide Reasonable Accommodation
In Violation of Government Code §12940(m)**

54.     Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

55.     Government Code §12940(m) makes it unlawful "[f]or an employer . . . to fail to make reasonable accommodation[s] for the known physical disability of an

1 | . . . employee." Government Code §12940(m)(1).  Government Code §12926 defines
2 | "physical disability" to include "[b]eing regarded or treated by the employer . . . as
3 | having . . . any physical condition that makes achievement of a major life activity
4 | difficult." Government Code §12926(m)(4); *see also Gelfo v. Lockheed Martin Corp.*,
5 | 140 Cal. App. 4th 34, 53 (2006). "'Major life activities' shall be broadly construed
6 | and includes physical, mental, and social activities and working." Government Code
7 | §12926(m)(1)(B)(iii).  Alcoholism is a protected disability under California law.
8 | *Gosvener.*, 51 Cal. App. 4th at 813.

56. "[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her own duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999).

57. At all times mentioned herein, Mr. Bergen was in a class of persons protected by Government Code §12940 because of his physical disability, and because Defendants perceived Mr. Bergen as having a physical disability.

58. Mr. Bergen requested a reasonable accommodation for his alcoholism by asking for a brief period of time off from work to seek treatment for his alcoholism. Mr. Bergen was already engaged in discussions with Defendants' Benefits Manager relating to (1) his alcoholism; (2) his intention to take leave; and (3) that he would be researching treatment centers and work with Defendants to determine his scheduling. Furthermore, Mr. Bergen was also communicating with Defendants' Employee Assistance Program.

59. Defendants, however, refused to provide Mr. Bergen with reasonable accommodations, even though it could have easily done so without undue hardship.

60. As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

HAEGGQUIST & ECK, LLP

61.     As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

62.     In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

63.     Mr. Bergen is also entitled to costs and reasonable attorneys' fees pursuant to Government Code §12965(b) because of Defendants' wrongful conduct.

### COUNT V

### Retaliation for Requesting Reasonable Accommodation In Violation of Government Code §12940(m)

64.     Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

65.     Government Code §12940(m) makes it unlawful "[f]or an employer . . . [to] retaliate or otherwise discriminate against a person for requesting reasonable accommodation under this subdivision, regardless of whether the request was granted." Government Code §12940(m)(2).

66.     At all times mentioned herein, Mr. Bergen was in a class of persons protected by Government Code §12940 because of his physical disability, and because Defendants perceived Mr. Bergen as having a physical disability.

67.     Mr. Bergen requested a reasonable accommodation for his alcoholism by asking for a brief period of time off from work to seek treatment for his alcoholism. Mr. Bergen was already engaged in discussions with Defendants' Benefits Manager relating to (1) his alcoholism; (2) his intention to take leave; and (3) that he would be researching treatment centers and work with Defendants to determine his scheduling.

HAEGGQUIST & ECK, LLP

Furthermore, Mr. Bergen was also communicating with Defendants' Employee Assistance Program. Defendants retaliated against Mr. Bergen because he requested a reasonable accommodation relating to his disability. As such, Defendants violated Government Code §12940(m)(2).

68. As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

69. As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

70. In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

71. Mr. Bergen is also entitled to costs and reasonable attorneys' fees pursuant to Government Code §12965(b) because of Defendants' wrongful conduct.

## COUNT VI

### Failure to Engage in the Interactive Process
### In Violation of Government Code §12940(n)

72. Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

73. Government Code §12940(n) makes it unlawful "[f]or an employee . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a reasonable accommodation by an employee or applicant with a known physical . . . disability . . . ." Government Code §12940(n). Government Code §12926 defines

HAEGGQUIST & ECK, LLP

HAEGGQUIST & ECK, LLP

"physical disability" to include "[b]eing regarded or treated by the employer . . . as having . . . any physical condition that makes achievement of a major life activity difficult." Government Code §12926(m)(4); *see also Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 53 (2006). "'Major life activities' shall be broadly construed and includes physical, mental, and social activities and working." Government Code §12926(m)(1)(B)(iii). Alcoholism is a protected disability under California law. *Gosvener*, 51 Cal. App. 4th at 813.

74.     At all times mentioned herein, Mr. Bergen was in a class of persons protected by Government Code §12940 because of his physical disability, and because Defendants perceived Mr. Bergen as having a physical disability.

75.     Mr. Bergen requested a reasonable accommodation for his alcoholism by asking for a brief period of time off from work to seek treatment for his alcoholism. Mr. Bergen was already engaged in discussions with Defendants' Benefits Manager relating to (1) his alcoholism; (2) his intention to take leave; and (3) that he would be researching treatment centers and work with Defendants to determine his scheduling. Furthermore, Mr. Bergen was also communicating with Defendants' Employee Assistance Program.   Indeed, Mr. Bergen could have performed the essential functions of his job with this reasonable accommodation.   Defendants, however, refused to engage in a timely, good faith, interactive process with Mr. Bergen in order to determine effective reasonable accommodations in response to Mr. Bergen's request.

76.     By failing to engage in a timely, good faith, interactive process with Mr. Bergen, Defendants violated Government Code §12940(n).

77.     As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

78.     As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional

distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

79.     In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

80.     Mr. Bergen is also entitled to costs and reasonable attorneys' fees pursuant to Government Code §12965(b) because of Defendants' wrongful conduct.

## COUNT VII

### Failure to Prevent Discrimination and Retaliation
### In Violation of Government Code §12940(k)

81.     Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

82.     Government Code §12940(k) makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination . . . from occurring." "[R]etaliation is a form of discrimination actionable under [Government Code] section 12940, subdivision (k)." *Taylor v. City of Los Angeles Dept. of Water & Power*, 144 Cal. App. 4th 1216, 1240 (2006) (disapproved on other grounds in *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal. 4th 1158, 1173-1174, 177 P.3d 232 (2008)).

83.     Defendants were aware of the discriminatory and retaliatory conduct towards Mr. Bergen and failed to take all reasonable steps necessary to prevent such discrimination and retaliation from occurring.     Thus, Defendants violated Government Code §12940(k).

84.     As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits in an amount to be determined according to proof at the time of trial.

HAEGGQUIST & ECK, LLP

85.    As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

86.    In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

87.    Mr. Bergen is also entitled to costs and reasonable attorneys' fees pursuant to Government Code §12965(b) because of Defendants' wrongful conduct.

## COUNT VIII

### False Representations to Induce Employee to Change Residences for Employment In Violation of Labor Code §970

88.    Mr. Bergen re-alleges and incorporates herein by reference each allegation in the preceding and subsequent paragraphs.

89.    Labor Code §970 provides, in pertinent part, that "[n]o person . . . shall influence, persuade, or engage any person to change from . . . any place outside to any place within the State . . . for the purpose of working in any branch of labor, through or by means of knowingly false representations . . . ." concerning the kind, character, existence, length of time of work, or compensation of such work.  Labor Code §970(a) and (b).  Any person who violates this section is guilty of a misdemeanor.  Labor Code §971.

90.    Labor Code §972 provides that any person "who violates any provision of Section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations."

91.    As stated herein above, Defendants knowingly made false representations to Mr. Bergen concerning, *inter alia*, the kind and character of the

work, including the implicit or direct assurance that he would not be subject to discrimination. Defendants' representations to Mr. Bergen were false and, when making them, managing agents knew they were false. Mr. Bergen, who would not have quit his job with Anderson Corporation in Minnesota, moved his family across the country to California, and accepted a job with Defendants but for Defendants' false representations.

92. As a proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, substantial losses in earnings and job benefits, and incurred relocation expenses, in an amount to be determined according to proof at the time of trial.

93. As a further proximate result of Defendants' wrongful conduct, Mr. Bergen has suffered, and continues to suffer, humiliation, embarrassment, emotional distress, and mental anguish, all in an amount to be determined according to proof at the time of trial.

94. In performing the acts alleged herein, Defendants acted with oppression, fraud, malice, and with conscious disregard for the rights of Mr. Bergen, and Mr. Bergen is therefore entitled to punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

### PRAYER

WHEREFORE, the Plaintiff seeks judgment as follows:

A. For compensatory damages, including loss of wages and benefits, and emotional distress damages according to proof at trial;

B. For pre-judgment and post-judgment interest to the extent allowable by law;

C. For attorneys' fees and costs pursuant to 42 U.S.C. §12205, California Government Code §12965(b) and as otherwise allowable by law;

D. For an injunction restraining Defendants from continuing to engage in unlawful practices; and

1    E.    For such other and further relief as the Court deems just and proper.

2                           **DEMAND FOR JURY TRIAL**

3    Plaintiff demands a trial by jury on all claims.

4    Dated: September 25, 2020           HAEGGQUIST & ECK, LLP
                                         ALREEN HAEGGQUIST
5                                        KATHLEEN A. HERKENHOFF
                                         ROBERT D. PRINE
6

7

8                                        By:  *s/Kathleen Herkenhoff*
                                             KATHLEEN HERKENHOFF
9

10                                       225 Broadway, Suite 2050
                                         San Diego, CA 92101
11                                       Telephone: (619) 342-8000
                                         Facsimile: (619) 342-7878
12                                       alreenh@haelaw.com
                                         kathleenh@haelaw.com
13                                       robertp@haelaw.com

14

15                                       Attorneys for Plaintiff

16

17

18

19

20

21

22

23

24

25

26

27

28

HAEGGQUIST & ECK, LLP

                                    22
                  COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF